Grady D. **KERSH** et al., Appellees,

v.

V. Lee **BOUNDS**, Commissioner of the North Carolina Department of Corrections, et al., Appellants.

Nos. 73-1578, 73-1579.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1974.

Decided July 25, 1974.

586

Jacob L. Safron, Asst. Atty. Gen., N. C. (Robert Morgan, Atty. Gen., N. C., James M. Bowen, Rutherfordton, N. C., Atty., for Polk County defendants, and Frank B. Aycock, III, Charlotte, N. C., Atty., for Gaston County defendants, on brief), for appellants.

J. David James, Greensboro, N. C. (Norman B. Smith, Greensboro, N. C. [Court-appointed counsel], and Smith, Carrington, Patterson, Follin & Curtis, Greensboro, N. C., on brief), for appellees.

Before BRYAN, Senior Circuit Judge, and BUTZNER and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

This suit was brought under 42 U.S.C. § 1983 by three indigent inmates of the North Carolina Department of Correction (Department) against the Correction Department Commissioner and the members of the Board of Commissioners of Gaston and Polk Counties, North Carolina. The prisoners alleged that the defendants had treated prisoners in safe-keeping status, called safekeepers, normally housed in county prisons at county expense, differently from the regular inmates under custody and control of the Department insofar as their requests for elective, non-essential medical services are concerned. They say the safekeepers had thus suffered cruel and unusual punishment in violation of the Eighth Amendment and that this discrimination ran afoul of the Fourteenth Amendment Equal Protection Clause. The case was tried, without a jury, on stipulations of fact, the district court concluding that the prisoners did not prove cruel and unusual punishment, but that the state had no rational basis for such classification among prisoners, and violated the Equal Protection Clause by so doing. The defendants were ordered not to treat the safekeepers differently in any medical matter from other prisoners generally, and each plaintiff was awarded $1.00 as nominal damages. Because we conclude that the state has a rational basis for its action, and there was no Equal Protection violation, we reverse.

One category of safekeeper is a prisoner who has been sentenced to a term of imprisonment for longer than thirty days, has appealed his conviction, and has not been released on bail pending appeal. A safekeeper may also be one held pending trial. Such prisoners are generally held in county jails and the cost of maintaining the prisoner is paid by the county where the prisoner was

tried. Safekeepers held pending appeal may be transferred, as a matter of course, to the Department in accordance with N.C.G.S. § 15–183, while any other county prisoner may be transferred if considered necessary for his safety or to avoid a breach of the peace. N.C.G.S. § 153–189.1.[1] In any event, the Department is not liable for the expenses of maintaining convicts until they have been received by Department authorities and, since execution of the sentence is automatically stayed pending appeal under N.C.G.S. § 15–184, safekeepers are not regarded as serving sentences in the Department system until their appeals are decided. The county responsible is billed by the Department for the safekeepers held by the Department for the county. See also N.C.G.S. §§ 148–4 and 148–29. The parties stipulated that an average of 140 North Carolina prisoners are on safekeeping status in the custody of the Department at any given time, and that the average stay of a person on safekeeping status is five months. The average stay of felony prisoners in the Department system is slightly more than four and one-half years, and misdemeanants slightly more than ten months.

The Department medical staff categorizes inmate medical services as being emergency, routine, or elective. Emergency and routine medical care is given to all state and county prisoners, including safekeepers, while elective care (i. e., that which is not essential to the safekeeper's immediate welfare and poses no threat to life or limb) is given at Department expense only to prisoners in custody of the Department who are not on safekeeping status.

The three plaintiffs were all on safekeeping status, held at a Department prison, at the time this suit was filed, and all subsequently became regular inmates under the general custody and control of the Department.

While on safekeeping status pending trial, being held by the Department by order of the Superior Court of Gaston County, plaintiff Price (on loan from the State of Florida for trial) was examined by prison doctors on June 22, 1971 and found to have a slight umbilical hernia. The Department medical staff did not, in their judgment, believe any treatment was necessary, and, at a subsequent examination on December 23, 1971, no hernia was found.

Plaintiff Kersh, while on safekeeping pending appeal, was examined on May 5, 1971 and found to have 20–25 vision. He was found not to be in immediate need of glasses and was not given any. Kersh was again examined on November 4, 1971 and was found to have perfect (20/20) vision at that time.

Plaintiff Rogers was a safekeeper pending appeal who, on examination, was found to need corrective eyeglasses and false teeth (there is no allegation he did not come to prison without either). His request for same was refused, but he received both eyeglasses and false teeth in the fall of 1971 when his conviction was affirmed and he became a regular inmate.

It was stipulated that, had these prisoners been members of the regular prison population other than in safekeeping status when these minor physical impairments were found to exist, they would have been provided with the medical attention or corrective appliances, the lack of which is complained of.

■■ It is argued that the effect of the order of the district court has been to declare the applicable North Carolina statutes unconstitutional, and that a three-judge court should have been convened to hear the case. This contention has no merit, for the only issue here concerned the pattern or practice of state officials in treating safekeeper prisoners different from other prisoners. It is well-settled that when the allegation of unconstitutionality goes to the result obtained by use of statutes not attacked as unconstitutional, a three-judge court is not required. E. g., Turner v.

---

1. Effective February 1, 1974, N.C.G.S. § 162–39.

Fouche, 396 U.S. 346, 353–354 and n. 10, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970).

The district court viewed the issue here as being whether there is any justification for inmates being treated to different standards of medical care because those services are being paid for by different divisions of the government, safekeepers by the county, the others by the state. It found that plaintiffs had not proved cruel and unusual punishment, so only the constitutionality of the practice which maintained the two standards of medical treatment for prisoners is considered here. The court was not impressed with the State's argument that safekeeping status only lasted a short time, and to require providing of elective medical care would be a nuisance, administrative inconvenience, and would cost the state more money. The court said that this distinction between prisoners, based on which state instrumentality pays the bill, is arbitrary and unreasonable, and held such procedure to be a violation of the Equal Protection Clause.

■ We think the district court erred when it held the Equal Protection Clause violated upon the facts of this case. Under the North Carolina System, Department prisoners are those who have exhausted their avenues of appeal and are serving their sentences, and all such prisoners are furnished the disputed elective medical care. Safekeeper prisoners, however, are not in that category, for they have not yet been committed to the custody and control of the Department, despite the fact that some safekeepers may be assigned to the Department for custodial purposes only at the expense of the county. The difference is at once apparent. Prisoners whose terms are not fixed by reason of pending appeals or because not yet tried are safekeepers, prisoners of the county. North Carolina has simply said that those charged with or convicted of crime are county prisoners until they begin serving their sentences, at which time they become Department prisoners. Since the county prisoners are treated

alike and the Department prisoners treated alike, we are of opinion there is no equal protection violation. The fact that some county prisoners are housed in Department prisons is not of constitutional significance nor is the fact that the county continues to bear the expense of those prisoners.

Even assuming, however, that the district court was correct in its holding that the North Carolina Department of Correction may have only one category of prisoners, which must include all in the physical custody of the Department, there would still be no Equal Protection violation. "There is no doubt that discipline and administration of state detention facilities are state functions. They are subject to federal authority only where paramount federal constitutional or statutory rights supervene." Johnson v. Avery, 393 U.S. 483, 486, 89 S.Ct. 747, 749, 21 L.Ed.2d 718 (1969). The constitutional deprivations alleged here were that these three safekeeper prisoners were not allowed elective and unessential, but desired, medical treatment at state expense while prisoners who are regarded as serving their sentences do receive such care as a matter of course. This administrative procedure, just as bail release procedures considered in Schilb v. Kuebel, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1972), could hardly be regarded as affringing some fundamental right, emanating from the Constitution, or as being based on any suspect criterion. That being so, the applicable standard for measuring the justification of this different treatment of prisoners is the traditional one of whether the distinction has some rational basis. McGinnis v. Royster, 410 U.S. 263, 270, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); Schilb v. Kuebel, supra, 404 U. S. at 365, 92 S.Ct. 479 (1972).

We agree with the defendants that it would be a nuisance and administrative inconvenience for the state to be forced to give unessential medical care to safekeeper prisoners, but our conclusion need not be based on this nor on the fact that prisoners who now say they desire

this unessential treatment did not have it outside the prison and were, nevertheless, able to commit their crimes unhindered by their medical inconveniences, which, on the average, would have to wait only five months for treatment.

We think that North Carolina has a rational basis for providing by law that counties shall pay for the upkeep of prisoners whose terms of confinement are uncertain and have not become fixed, who are subject to immediate return to the Sheriff of the County and who are ordinarily in the physical custody of the Sheriff of a county. We see nothing irrational about the State paying for prisoners in its care, and counties paying for prisoners in their care, although such latter prisoners may have been housed by the State on a temporary basis.

We note that the plaintiffs admittedly have been furnished with both routine and emergency medical care. Failure to furnish other and additional elective medical care, which is not essential to the immediate welfare of the prisoners and the lack of which poses no threat to life or limb, we do not think is irrational. It may not be seriously contended that any prisoner detained for however short a period is entitled to have all his needed elective medical care performed while in custody, and it may not be argued that the State is not entitled to set some standard as to which prisoners shall receive the care. When we remember that safekeepers are in the custody of the Department only five months, half that of misdemeanants and less than one-tenth that of felons, and that safekeepers are essentially county prisoners, only being housed by the State on a temporary basis, we do not think North Carolina has acted in an irrational, arbitrary or capricious manner toward them. To the contrary, we are of opinion their treatment so far as medical care is concerned is both reasonable and rational and free from constitutional infirmity.

In sum, we can find nothing arbitrary, capricious or irrational in this state procedure. As the Supreme Court stated in McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed. 2d 393 (1961), "[t]he constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." This is not such a case. Although set in a different context, we think the language of the court in Ross v. Moffitt, 417 U.S. 600, 611, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974), is persuasive: "Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed without doing violence to principles recognized in other decisions of this Court. The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages'. [Citation omitted] Nor does it require the State to 'equalize economic conditions'." And, referring to the equal protection question there presented (State appointed attorneys for indigents in discretionary appeals), the court continued: "The question is not one of absolutes, but one of degrees." 417 U.S. at 612, 94 S.Ct. at 2445.

In view of the disposition we make of the case, we need not consider its class action aspects.

The judgment of the district court is Reversed.

BUTZNER, Circuit Judge (dissenting):

This case illustrates yet another form of deprivation of due process of law and invidious discrimination against prisoners who pursue their right of appeal.*

---

* See Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (felony indictment after request for de novo review of misdemeanor conviction); North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (unjustified increased sentence on retrial after habeas corpus); Wilson v. North Carolina, 438 F.2d 284 (4th

A state prisoner who elects not to appeal is provided non-emergency medical services deemed appropriate by prison doctors. On the other hand, the state denies similar medical attention to a prisoner while his appeal is pending. If the prisoner has been erroneously convicted, he is released or remanded for a new trial without the medical care which the state refused to provide during his wrongful incarceration. If he was properly convicted, he receives the care to which he would have been entitled in the first place had he not appealed.

I would hold that a prisoner is deprived of due process of law when the state pursues otherwise legitimate policies in a manner that is calculated to burden unnecessarily his right to appeal. Furthermore, there is no rational nexus between the exercise of this right and the state's classification of prisoners for medical purposes. Encumbrances on a right so important as appeal must be justified by more than the trifling cost and administrative inconvenience shown in this record. I would affirm also for the reasons stated in the excellent opinion of the district judge. Kersh v. Bounds, 364 F.Supp. 590 (W.D.N.C. 1973).

Cir. 1971) (refusal to credit time served pending appeal towards commutation of life sentence) ; Cole v. North Carolina, 419 F.2d 127 (4th Cir. 1969) (refusal to credit incarceration pending appeal to sentence).