Joseph **SWANSEY**, by Annie Swansey, mother and next friend, et al., Plaintiffs,

v.

Richard **ELROD**, Sheriff of Cook County, et al., Defendants.

No. 74 C 2986.

United States District Court, N. D. Illinois, E. D.

Jan. 10, 1975.

Sally T. Elson, Chicago, Ill., for plaintiffs.

Fredric B. Weinstein, Asst. State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

McLAREN, District Judge.

### I.

#### *Introduction*

This is a class action civil rights case commenced under 42 U.S.C. § 1983 challenging the detention of persons between the ages of thirteen and seventeen in Cook County jail.[1] The plaintiffs allege that such incarceration constitutes cruel and unusual punishment under the Eighth Amendment and violates the equal protection clause of the Fourteenth Amendment. The cause is now before the Court on plaintiffs' motion for a preliminary injunction and defendants' motion to dismiss. For the reasons set forth below, defendants' motion will be denied; plaintiffs' motion will be

1. Fifteen children under the age of 17 are now incarcerated in Cook County jail.

granted. Insofar as required this opinion shall constitute the Court's findings of fact and conclusions of law. F.R. Civ.P. 52(a), 65(d).

## II.

### Factual Background

Plaintiffs are pretrial detainees who have been transferred from juvenile jurisdiction to adult criminal prosecution pursuant to Ill.Rev.Stat., Chap. 37, § 702–7. Until transferred, these children could not be prosecuted under the criminal laws. Under Illinois law, the transfer procedure is as follows: the State's Attorney moves to transfer to adult jurisdiction; a hearing is then held in front of a juvenile judge; the judge enters an order permitting prosecution under the adult criminal laws if he finds that proceeding under the Juvenile Court Act is not in the best interests of the minor or the public. In ruling on the transfer motion, the statute suggests that the juvenile judge consider these factors:

"(1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority."

Ill.Rev.Stat., Chap. 37, § 702–7(3)(a). In operation, as the testimony of Maurice M. Dore, Assistant State's Attorney of Cook County in charge of the Juvenile Division, and Judge William S. White, presiding judge of the Juvenile Division of the Circuit Court of Cook County, shows, the children who are transferred are charged with committing the most serious felonies in a planned manner. Less than 100 out of some 20,000 delinquency matters are transferred to the adult criminal justice system in Cook County each year. Thus, under this transfer procedure many children who are charged with serious felonies remain under juvenile court jurisdiction if their alleged behavior is not considered severely "criminal" in a sociological sense. To date, neither the State's Attorney's Office nor the transferring judge has actively considered the location of post-transfer detention as a significant factor in the decision to transfer.

When transferred to the adult criminal justice system, a child is physically transferred from the Cook County Juvenile Temporary Detention Center (Audy Home) to the Cook County jail. The Cook County jail is a maximum security institution which houses some 2300 pretrial detainees, sentenced misdemeanants, federal prisoners and state prisoners awaiting shipment to other state institutions. The jail was designed to contain 1300 prisoners, it now holds over 2500 prisoners. In the near future, however, a new building will open in the facility which will house 700 to 800 additional individuals.

Children under the age of seventeen are housed in two locations in the jail, Ward 1 and E–Block. Ward 1 is the hospital area within the jail. The vast majority of Ward 1 residents are adults. Some of these adults may have prior felony convictions. Jail officials maintain that members of the plaintiff class are placed in Ward 1 for their own protection against the general jail population. Other residents of Ward 1, however, may be under severe psychological stress. On occasion, other residents of Ward 1 have been placed in leather restraints so that they would not harm themselves or others. Moreover, Ward 1 is extremely overcrowded. Several plaintiffs have had to sleep on mattresses, on carts or tables, or on the floor. No separate eating area is provided in Ward 1.

E–Block is the area wherein most of the inmate population in the 17 to 20 year old age group is housed. This area is also overcrowded; inmates must sleep in extra bunks placed in the dayroom area. Each cell in this area is occupied by more than one inmate.

Members of the plaintiff class testified that various inmates of Ward 1 conversed with them about methods of committing crimes. Jail officials conceded that there is no way, under present conditions, to prevent such conversations. It was also conceded that members of the plaintiff class received the same diet as the general prison population, a diet which is admittedly inadequate for growing adolescents. Additionally, members of the plaintiff class are only allowed the standard two visits per month from family members. Defendants also concede that plaintiffs receive no rehabilitative treatment in Cook County jail. Moreover, none of the jail guards receives any special training in juvenile care. This is despite the fact that jail officials recognize that juveniles present special problems for penal institutions. Jail officials also admit that they are unable to force certain members of the plaintiff class to attend the school in the jail as required by state law. Even if plaintiffs were to attend school, plaintiffs' expert presented uncontradicted testimony that the school was grossly inadequate. Additionally, no recreational program is provided for juveniles.

Plaintiffs presented uncontradicted expert testimony as to the effect of the Cook County jail experience on members of the plaintiff class. Plaintiffs' expert, Dr. Marvin J. Schwarz, stated that the jail experience would cause a "devastating, overwhelming, emotional trauma with potential consolidation of [these children] in the direction of criminal behavior." Plaintiffs' expert further testified that the 17 to 20 year old residents of E–Block and the older residents of Ward 1 would convey extremely destructive values to the plaintiff class. He further noted that there were crucial

psychological distinctions between 13 to 16 year olds and 17 to 20 year olds who are being processed through the criminal justice system. From his personal knowledge of Cook County jail, plaintiffs' expert testified that the jail did not and could not recognize these distinctions. The expert also explained why plaintiffs would prefer to remain on Ward 1 with older adults instead of the 17 to 20 year olds housed in E–Block. The older adolescents' peer group structures including the street gang phenomenon present in the jail would viciously exploit the younger group "sexually and otherwise." The Ward 1 residents provide some protection against such dangers but still provide highly destructive models for the children.

In sum, Dr. Schwarz testified that the initial period of incarceration is crucial to the development of a young juvenile: if improperly treated the child will almost inevitably be converted into a hardened permanent criminal who will forever be destructive toward society and himself. Dr. Schwarz noted that this process will likely occur even if the child is innocent and released from custody. Cook County jail provides none of the psychiatric or educational services which could ameliorate the effects of this period of incarceration.

In contrast to the treatment accorded children transferred to adult jurisdiction, the County provides juveniles under Juvenile Court jurisdiction extensive psychiatric and educational services in the Audy Home. The Audy Home is a recently built, short term detention center exclusively used for children under the age of seventeen. It is a relatively secure institution which can prevent its detainees from escaping. It is composed of 29 individual units which are designed to accommodate 16 to 18 persons. Only 20 of these units are being used because the institution's population is presently about 264. With present staff, the Audy Home could hold 365 children, provided they fell into proper categories. In operation, the institution separates children detained on delin-

quency petitions from children detained because they are minors in need of supervision (MINS) (children who have committed no crime but who the Juvenile Court determines need court supervision). Apparently the Audy Home also separates pending delinquent detainees on the basis of age, seriousness of the alleged offenses, and other social factors.

As a matter of course, Audy Home provides extensive medical, psychological, casework and educational services to its detainees. Recreational programs are provided. It provides an adequate diet for juveniles. The Home allows two visits per week for its detainees. Moreover, Dr. Schwarz testified that the programs and environment of the Audy Home could prevent many of the destructive elements of the initial incarceration period.

### III. *Legal Conclusions*

#### A. *Jurisdiction is proper under 42 U. S.C. § 1983*

■ Defendants have moved to dismiss the instant complaint asserting that a recent Supreme Court case, Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), requires plaintiffs to exhaust state court remedies. The *Preiser* Court held that when a state prisoner is challenging, in federal court, the fact of his confinement, he cannot disguise his action as a § 1983 claim but rather must resort to the judicial remedy of habeas corpus. To obtain a writ of habeas corpus in federal court a state prisoner must exhaust his state court remedies. 28 U.S.C. § 2254(b). If a remedy under the Civil Rights Act is available, a plaintiff need not first attempt to seek redress in a state court forum. See, *e. g.,* Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Defendants argue that plaintiffs' claim sounds in habeas corpus. Some cases hold that when a prisoner challenges the location of his incarceration a writ of habeas corpus is the proper remedy. See, *e. g.,* In re Bonner, 151 U.S. 242, 14 S.Ct. 323, 38 L.Ed. 149 (1894); Creek v. Stone, 126 U.S.App.D.C. 329, 379 F.2d 106 (1967); Leahy v. Estelle, 371 F.Supp. 951 (N.D.Tex.1974). In these cases the applicant for the writ argues that confinement in a certain place vitiates the justification for his confinement. United States ex rel. Murray v. Owens, 341 F.Supp. 722 (S.D.N.Y.1972), rev'd on other grounds, 465 F. 2d 289 (2d Cir. 1972), cert. den., 409 U. S. 1117, 93 S.Ct. 930, 34 L.Ed.2d 701 (1973).

■ In the instant action, plaintiffs directly attack the conditions of their confinement. They seek transfer to another institution only incidently as a matter of relief; if the conditions of their confinement could be corrected within the confines of Cook County jail, the alleged constitutional wrong here would be corrected without transfer to another institution. Thus, this suit attacks the conditions of incarceration not the location thereof and the action is properly brought under § 1983 without exhausting state remedies. Edwards v. Schmidt, 321 F.Supp. 68 (W.D.Wis. 1971).

#### B. *Standard of Review under the Eighth Amendment*

■ The meaning of cruel and unusual punishment is not fixed. As the Court stated in Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958):

> "The [8th Amendment] must draw its meaning from the evolving standards of decency that mark the progress of a maturing society."

However, tests for cruel and unusual punishment have begun to emerge. The severity or harshness of a punishment should not offend the "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968). Moreover, punishment cannot be disproportionate to the offense. See, *e. g.,*

Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910); Nelson v. Heyne, 491 F.2d 352 (7th Cir. 1974).

Under these standards courts have accorded juveniles a particularly high standard of care. For instance, this circuit has held that persons held under juvenile court jurisdiction are entitled to adequate rehabilitative treatment. Nelson v. Heyne, *supra*. Other courts have held that juveniles held under juvenile court jurisdiction cannot be mixed with adult prisoners. See, *e. g.*, White v. Reid, 125 F.Supp. 647 (D.D.C.1954); Stinnett v. Hegstrom, 178 F.Supp. 17 (D.Conn.1959). *Contra* United States ex rel. Murray v. Owens, *supra*. The rationale for these decisions is that the high standard of care required is a *quid pro quo* for society's right to exercise its *parens patriae* control over juveniles in custody. In effect, the Supreme Court has held that a juvenile is entitled to a higher standard of custodial care in return for a more limited set of rights during the adjudication process under the due process clause. McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

In the instant action the strict rationale of the above cited cases is inapplicable. Since the plaintiffs have been transferred to adult authority, they will receive the full panoply of criminal constitutional rights to which any adult would be entitled. Defendants thus argue that plaintiffs are entitled to no higher standard of care than any other detainee in the criminal justice system. The Court cannot agree with this proposition. Children between the ages of 13 and 16 are not merely smaller versions of the adults incarcerated in Cook County jail. As noted, the effect of incarceration in Cook County jail on juveniles can be devastating. At present these juveniles remain unconvicted of any crime and therefore must be presumed innocent. Although the Eighth Amendment does not mandate that this Court become a super-legislature or super-administrator under these circumstances, the Court is not powerless to act. Under the Eighth Amendment children who remain unconvicted of any crime may not be subjected to devastating psychological and reprehensible physical conditions, and while other juvenile law cases are not strictly on point, they recognize that juveniles are different and should be treated differently. Thus, the evolving standards of decency that mark the progress of a maturing society require that a more adequate standard of care be provided for pre-trial juvenile detainees. Plaintiffs therefore have demonstrated that there is a likelihood of success on their Eighth Amendment claim.

### C. Plaintiffs' Equal Protection Claim

Plaintiffs also argue that their detention in Cook County jail violates the equal protection clause. Under Ill.Rev. Stat., Chap. 38, § 1005–8–6(c), even if convicted in the adult criminal justice system, a minor under the age of 17 still cannot be confined with adults in the Adult Division of the Illinois Department of Corrections. Apparently, juveniles under 17 who are convicted as adults are incarcerated in institutions which theoretically provide adequate rehabilitative services. Moreover, all juveniles under juvenile court jurisdiction always receive these services. Plaintiffs argue that incarcerated juveniles under adult jurisdiction who are unconvicted can receive no less.

Under the equal protection clause this Court's review of state action is limited. So long as the governmental action in question is rationally related to a legitimate government purpose the allegedly discriminatory action passes constitutional muster. See, *e. g.*, San Antonio Independent School District No. 1 v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Measured against the effects of the treatment accorded juveniles in Cook County jail the state has yet to present a rational reason for its behavior. Incarceration at Cook County

jail appears to be predicated on only slight administrative convenience involving transportation of the juveniles to court for hearings. This occurs about once a month. Defendants also argue that Cook County jail is a more secure institution than any other location in which the plaintiffs could be detained. Evidence in the record does not support this contention.

No reason is given for the lack of rehabilitative services for juveniles at the jail other than that defendants do not believe plaintiffs are entitled to such services because they have been transferred to adult jurisdiction. Plaintiffs' argument on this point seems well taken. If the state provides such treatment to convicted juvenile felons because of their age it is irrational to deny unconvicted detainees the same services under similar conditions. Unconvicted detainees can remain in Cook County jail for up to two years. As Dr. Schwarz stated, this period, particularly its earlier stages, is crucial to the development of the juvenile. It seems irrational to deny what the state admittedly considers essential services and a controlled environment to juveniles during this crucial period. Thus, plaintiffs, even under this limited standard of review, have again demonstrated a likelihood of success.

D. *Right to preliminary injunctive relief and the scope of relief*

The award of a preliminary injunction is an extraordinary remedy. The party seeking such relief has the burden of establishing a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought. The moving party must also show that irreparable harm is likely to occur in the absence of interlocutory relief. He must also demonstrate that issuance of an injunction will not substantially harm other interested parties and that the public interest generally requires issuance of an injunction. See, *e. g.*, Crowther v. Seaborg, 415 F.2d 437 (10th Cir. 1967); First Citizens Bank v. Camp, 432 F.2d 481 (4th Cir. 1970).

Under these tests, plaintiffs have sustained their burden. The Court has already determined that there is a likelihood of success on both the Eighth Amendment and the equal protection claims. Dr. Schwarz' testimony shows that continued incarceration in Cook County jail under present conditions causes irreparable harm. Moreover, it is evident that the public interest commands interlocutory relief. A process which almost invariably produces juveniles which act destructively toward themselves and society must be corrected with dispatch.

The burdens of granting interlocutory relief in the form requested by plaintiffs present more difficult problems. Plaintiffs have requested that they be physically transferred to Audy Home while awaiting trial. Defendants concede that Audy Home can provide the minimum level of care required by juveniles but they argue that transferring plaintiffs to the Audy Home will threaten the morals of the other detainees at the home. Audy officials, however, already have procedures to segregate more allegedly serious offenders from less seriously involved children. Moreover, Dr. Schwarz testified that the quality of the acts which plaintiffs are charged with may not necessarily affect their behavior in custody. Additionally, the architecture of the home and its present population guarantee that, if necessary, plaintiffs can be effectively isolated from other detainees. Therefore, on balance the Court determines that physically transferring the plaintiffs to Audy Home would not place an undue burden on the defendants. Since the evidence demonstrates that defendants cannot now provide adequate care for juveniles at Cook County jail or segregate young juveniles from older juveniles and adults and provide necessary support services, plaintiffs—and all others similarly situated—should be transferred to Audy Home where such an environment and services are available.

Because implementation of this opinion will involve some relatively complex administrative decisions about readmitting plaintiffs and others into possibly separate units in the Audy Home, the Court desires further guidance on the form of a decree. The parties are therefore instructed to prepare a draft order embodying the principles of this decision and to present the same within 10 days. If agreement cannot be reached on the form of the decree, each party shall submit a plan to the Court and the Court will enter its own order conforming to the views expressed herein.

Pending the entry of such order, defendants are directed to transfer no additional juveniles of plaintiffs' classification from Audy Home to the Cook County jail.

It is so ordered.