Gerard COOPER, Plaintiff,

v.

Richard ELROD, et al., Defendants.

No. 85 C 312.

United States District Court,
N.D. Illinois, E.D.

July 17, 1985.

## MEMORANDUM OPINION
## AND ORDER

ROVNER, District Judge.

Plaintiff, a pretrial detainee in the State of Illinois, claims that defendants unlawful-

ly transferred him from the Cook County Juvenile Detention Center ("Audy Home") to the Cook County Jail after he turned seventeen years old because they did not grant him a prior hearing. Plaintiff bases his claim on an Illinois statute which provides that when a convicted person originally committed to the Juvenile Division of the Illinois Department of Corrections ("IDOC") reaches the age of seventeen, there shall be a hearing to determine whether or not that person shall be transferred to the Adult Division. Ill.Rev.Stat. ch. 38, ¶ 1005–8–6(c), 1003–10–7(a), (c) (1983). Plaintiff claims that defendants, in effecting his automatic transfer, acted under color of state law to deprive him of his Fourteenth Amendment rights to equal protection and due process in violation of 42 U.S.C. § 1983.[1] This Court has proper subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.

Prior to transfer, plaintiff Gerard Cooper filed in Cook County Circuit Court a motion to prevent transfer, which was denied on Friday, January 11, 1985. On Monday, January 14, 1985, after the transfer had occurred, plaintiff argued a motion for a temporary restraining order before this Court, which motion also was denied. Plaintiff now requests that this Court grant him the following relief: (a) a holding that the policy resulting in plaintiff's automatic transfer is unconstitutional; and (b) entry of an order directing defendants to transfer plaintiff Cooper back to the Audy Home until he is afforded a judicial hearing to determine whether he should be transferred to the Cook County Jail.

Presently before this Court are cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons given

---

1. Plaintiff brought this action in the alternative as an application for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241–2256. (Compl. at ¶ 2.) While some courts hold that when a prisoner challenges the location of his incarceration a writ of habeas corpus is the proper remedy, in those cases, unlike the instant case, the applicant for the writ argued that confinement in a certain place vitiated the justification for his confinement. *Swansey v. Elrod,* 386 F.Supp. 1138, 1142 (N.D.Ill.1975); *United States ex rel. Murray v. Owens,* 341 F.Supp. 722 (S.D.N.Y. 1972), *rev'd on other grounds,* 465 F.2d 289 (2d Cir.1972), *cert. denied,* 409 U.S. 1117, 93 S.Ct. 930, 34 L.Ed.2d 701 (1973). This Court finds that plaintiff's claim of an equal protection violation is properly brought as a § 1983 action.

below, defendants' motion for summary judgment in their favor is granted, and plaintiff's motion for summary judgment is denied.

### Facts [2]

Plaintiff, Gerard Cooper, was born on January 12, 1968. On August 31, 1984, an indictment charging Cooper with murder was filed. Because he was unable to meet the $250,000 bond and because he was sixteen years old at the time, he was placed in the Audy Home pending trial.

The Audy Home is a detention center for juveniles, established by the County Board of Cook County, pursuant to Chapter 23 of the Illinois Revised Statutes, "Charities and Public Welfare." Ill.Rev.Stat. ch. 23, ¶ 2681 (1983). The Cook County Jail houses inmates aged seventeen and over. Inmates of the Cook County Jail are under the custody of the Cook County Sheriff, and within the Cook County Department of Corrections. Ill.Rev.Stat. ch. 125, ¶¶ 201–216 (1983).[3] It is the policy of the Cook County Corrections Department, the Cook County Jail, and the Audy Home to transfer Audy Home inmates to the Cook County Jail when they turn seventeen years old. The transfer is automatic: there is no prior hearing.

On Saturday, January 12, 1985, Cooper turned seventeen years old. On Monday, January 14, 1985, pursuant to the aforesaid county policy, defendants caused plaintiff Cooper to be transferred from the Audy Home to Cook County Jail without a hearing. Cooper is currently incarcerated at the Cook County Jail, housed in a school tier for 17 to 20 year olds. Under the Illinois Code of Corrections, Ill.Rev.Stat. ch. 38, ¶¶ 1003–1–1 to 1008–6–1, however, when a convicted person who is originally housed in the Juvenile Division of the IDOC turns seventeen years old, the sentencing court must conduct a hearing to determine whether that person should remain under the auspices of the Juvenile Division or be transferred to the Adult Division. Ill.Rev.Stat. ch. 38, ¶¶ 1005–8–6(c), 1003–10–7(a) (1983). These hearings are conducted by the sentencing court and the court is to consider all relevant matter, including, *inter alia,* the seriousness of the offense, "whether the protection of the community requires transfer," and "the sophistication and maturity of the juvenile." Ill.Rev.Stat. ch. 38, ¶ 1003–10–7(c).[4]

Only persons who have been convicted and sentenced to a term of imprisonment for a felony are committed to the IDOC and thus are within the purview of the Illinois Corrections Code. All pretrial detainees in Illinois, all those convicted persons awaiting sentencing, and all convicted persons sentenced to a term of imprisonment for less than one year, are under the custody of the Sheriff in the various county corrections systems. *See* Ill.Rev.Stat. ch. 38, ¶¶ 1003–1–2(b), 1005–8–6(b) (1983).[5]

---

**2.** The facts are undisputed. Thus, summary judgment shall be granted to the party who shows that he is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56.

**3.** Section 3 of the County Department of Corrections Act provides in pertinent part:

§ 3. Under the direction of the Sheriff the [County] department [of Corrections] shall have the powers and duties enumerated as follows:

(a) To operate and have jurisdiction over the county jail, municipal houses of correction within the county and any other penal, corrections or prisoner diagnostic center facility operated by either the county jail or municipal houses of correction.

(b) To have charge of all prisoners held in any institution, center or other facility in the county over which it has jurisdiction ... whether they are misdemeanants, felons, per-

sons held for trial, persons held in protective custody, persons held for transfer to other detention facilities.... It may transfer or recommit any prisoners from one institution, ... to any other institution ... whenever it determines that such transfer would promote the welfare and rehabilitation of the prisoner, or that such transfer or recommitment is necessary to relieve overcrowding.
Ill.Rev.Stat. ch. 125, ¶ 203 (1983).

**4.** See Appendix.

**5.** On July 11, 1985, while this Opinion was in final form, counsel for plaintiff sent this Court a letter informing the Court that plaintiff was convicted of murder on June 21, 1985. Plaintiff is currently scheduled for sentencing on July 18, 1985. For the following reasons, this Court finds that plaintiff's conviction did not render the instant action moot.

### Substantive Due Process Claim

Plaintiff Cooper claims first that defendants have violated his substantive due process rights. According to Cooper, Illinois law creates a constitutionally protected liberty interest for convicted persons in remaining in the Juvenile Division of the IDOC if they were originally housed there. Plaintiff argues that because pretrial detainees retain at least those constitutional rights enjoyed by convicted persons, *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979), he had a substantive due process right to a hearing before transfer to Cook County Jail.

██ The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law. The Supreme Court has established that the Due Process Clause in and of itself does not protect a convicted prisoner from arbitrary transfer from one institution to another within the state prison system. Indeed, that an inmate is transferred to a much more disagreeable institution does not implicate a Fourteenth Amendment liberty interest. *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976).[6]

██ It is true that "state statutes may create liberty interests that are entitled to the procedural protections of the due process clause of the Fourteenth Amendment." *Vitek v. Jones,* 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980). In the context of intrastate prison transfers, a state statute creates a liberty interest in remaining in a particular penal institution only when that statute places a "substantive limitation on the prison officials' exercise of discretion" to transfer an inmate. *Shango v. Jurich,* 681 F.2d 1091, 1101 (7th Cir.1982). *See also Harris v. McDonald,* 737 F.2d 662 (7th Cir.1984).

Under Illinois law, prison officials have *no* discretion to transfer convicted 17 year olds from the Juvenile Division of the IDOC to its Adult Division.[7] Rather, Section 3–10–7 of the Illinois Code of Corrections provides that the sentencing court shall determine whether or not a juvenile under 17 years of age when sentenced shall remain under the auspices of the Juvenile Division when he turns 17 years old. Further, a convicted person originally committed to the Juvenile Division is not required by law to be transferred to the Adult Division until he turns 21 years old; until that time, the sentencing court retains jurisdiction over such persons. Ill.Rev.Stat. ch. 38, ¶¶ 1005–8–6(c), 1003–10–7(a), (c). Thus, the Illinois statute creates a liberty interest for convicted persons aged 17 to 21 in remaining in the Juvenile Division of the IDOC if they were originally committed there.

---

As a pre-sentence detainee, plaintiff remains in the custody of the Sheriff at the Cook County Jail. Thus, Cooper continues to be affected by the allegedly unconstitutional injury he complained of initially: he is housed in Cook County Jail without the benefit of a pre-transfer hearing. Additionally, even after sentencing, plaintiff could continue to complain of the allegedly unconstitutional treatment accorded him while in defendants' custody. Especially since the complaint requests "such other and further relief as the interests of justice may require" (Compl. at ¶ 3.), there is no reason that plaintiff could not simply reframe his request from injunctive relief to damages. Furthermore, plaintiff Cooper argues that if he should have been housed in the Audy Home pending trial, he is entitled to a hearing prior to commitment to the Adult Division of the IDOC. *See* plaintiff Cooper's letter to the Court of July 11, 1985; plaintiff Cooper's Reply Mem. at 7–8.

Because plaintiff Cooper's conviction does not affect the merits of this case, and in the interest of conservation of the Court's judicial resources, this Opinion, including its references to Cooper as a pre-trial detainee, will be left intact.

**6.** *See also Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (Neither does an inter-state prison transfer, including one from Hawaii to California, deprive an inmate of any liberty interest protected by the due process clause in and of itself).

**7.** Note that section 5–8–6(c) states in part that the "Department of Corrections *shall* after a juvenile has reached seventeen years of age, *petition the court* to conduct a hearing pursuant to [Section 1003–10–7(c)]." Ill.Rev.Stat. ch. 38, ¶ 1005–8–6 (1983) (emphasis added).

In this case, plaintiff Cooper is a pretrial detainee, and thus is outside the scope of the Illinois Code of Corrections, and within the jurisdiction of the Cook County Department of Corrections. Plaintiff argues that nonetheless he has a substantive due process right to a judicial hearing before transfer to Cook County Jail. To establish this claim, plaintiff relies solely on *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), where the Supreme Court noted: "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted persons." *Id.* at 545, 99 S.Ct. at 1877.

Plaintiff's reliance is misplaced. In *Bell v. Wolfish*, 441 U.S. at 545, 99 S.Ct. at 1877, the Supreme Court first reviewed some of the constitutional protections retained by convicted persons despite their conviction and confinement in prison: freedom of speech and religion under the First and Fourteenth Amendments, protection against invidious discrimination on the basis of race under the Equal Protection Clause, and the protection of the Due Process Clause to prevent additional deprivation of life, liberty, or property without due process of law. *A fortiori*, the Court reasoned, pretrial detainees retain at least those constitutional protections. *Id.* As reviewed above, however, the Due Process Clause in and of itself does not give convicted persons *any* constitutional protec-

tion from intra-state prison transfer, for whatever reason. *Meachum v. Fano*, 427 U.S. at 225, 96 S.Ct. at 2538; *Montanye v. Haymes*, 427 U.S. at 242, 96 S.Ct. at 2547. Because the right to a pre-transfer hearing is not among those constitutional protections which convicted persons retain, *Bell v. Wolfish* does nothing to establish such a constitutional right for pretrial detainees such as Cooper.[8]

■ Of course, where the state statutorily creates a liberty interest for a certain group of state prisoners, procedural due process is required to insure that the state-created right is not arbitrarily abrogated. *See Meachum v. Fano*, 427 U.S. at 226, 96 S.Ct. 2539 (and cases cited therein). However, Section 3–10–7 of the Illinois Code of Corrections creates no liberty interest for plaintiff Cooper. Cooper has not yet been, and under Illinois law will never be, committed to the Juvenile Division of the IDOC. (*See* discussion *infra*.)[9]

In sum, defendants' refusal to give plaintiff Cooper a hearing prior to transfer to the Cook County Jail did not deprive Cooper of any substantive or procedural due process rights.

*Equal Protection Claim*

Plaintiff also claims that defendants have deprived him of his right to equal protection of the laws. Because Illinois law provides convicted persons originally committed to the Juvenile Division of the IDOC with a judicial hearing prior to trans-

---

**8.** *Cf. Cobb v. Atych*, 643 F.2d 946 (3d Cir.1981). In *Cobb*, a group of pretrial detainees was transferred from a county jail in Philadelphia to several state prisons at a significant distance from the city. The Third Circuit found that pretrial detainees retain certain constitutionally protected liberty interests, including the sixth amendment rights of effective assistance of counsel and a speedy trial. *Id.* at 957. Because the transfer interfered with those rights, by removing the pretrial detainees from close proximity to counsel and potential witnesses, the court held that procedural due process protections were necessary.

In the instant case, unlike *Cobb*, plaintiff does not allege that his transfer deprived him of established constitutional protections.

**9.** Furthermore, courts do not easily find statutorily-created liberty interests. For example, in

*Larson v. Mulcrone*, 575 F.Supp. 1 (N.D.Ill. 1982), aff'd without op., 723 F.2d 914 (7th Cir. 1983), the court rejected plaintiff's argument that a policy statement from the "general purposes" section of the Illinois Code of Corrections gave rise to a protectible liberty interest. *See also Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (The mere fact that a state created a careful procedural structure to regulate the use of administrative segregation did not indicate the existence of a protected liberty interest.); *Trice v. Kerr*, 578 F.Supp. 149 (W.D.Wis.1983) (Regulations that required prison officials to comply with substantive and procedural requirements before recommending inmate transfer did not create a liberty interest where the ultimate decision maker retained discretion.)

fer to the Adult Division, plaintiff argues that the State's denial of a similar hearing to pretrial detainees prior to transfer from the Audy Home to Cook County Jail violates the Equal Protection Clause of the Fourteenth Amendment.[10]

▮ The Fourteenth Amendment guarantees all persons the equal protection of the laws. U.S. Const. amend. XIV. The State is required to govern impartially and may not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective. *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). In applying the Equal Protection Clause, however, the Supreme Court has recognized consistently that the Fourteenth Amendment does not deny to States the power to treat different classes of persons differently. *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971) (and cases cited therein). Thus, a preliminary step in equal protection analysis is to determine whether the persons who are subject to disparate treatment are similarly situated. *Johnson v. Smith,* 696 F.2d 1334 (11th Cir.1983).

Plaintiff claims that the State discriminates between pretrial detainees and convicted persons in Illinois. An examination of the statutory scheme, however, reveals that the distinction is not between pretrial detainees and convicted persons, but rather between short-term and long-term inmates. Offenders sentenced to a term of imprisonment for a felony are committed to the penitentiary system of the Illinois Department of Corrections. Offenders sentenced to a term of imprisonment of less than one year, however, are committed to the custody of the Sheriff. Ill.Rev.Stat. ch. 38, ¶ 1005–8–6 (1983). Also in county custody are pretrial detainees and convicted persons awaiting sentencing. *See* Ill.Rev.Stat. ch. 125, ¶ 203(b); ch. 38, ¶¶ 1003–1–2, 1005–8–7. Thus, all inmates who are imprisoned on a temporary or short-term basis are in the custody of the Sheriff, in the various county corrections systems, while all long-term prisoners are committed to the Illinois Department of Corrections.

▮ Several courts have held that the Equal Protection Clause is not implicated where county authorities treat their prisoners differently than the state Department of Corrections treats its prisoners. *Dawson v. Kendrick,* 527 F.Supp. 1252 (S.D.W. Va.1981); *Kersh v. Bounds,* 501 F.2d 585 (4th Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975). Plaintiff does not challenge the State's authority to delegate the responsibility for one class of prisoners to the county governments and for another to the state Department of Corrections. According to *Dawson* and *Kersh,* while this division of authority may never justify subjecting county prisoners to unconstitutional conditions or practices, it does not, as a matter of equal protection, require that the conditions, practices and, especially, the rules at the various institutions of the two governmental entities be identical. *Dawson,* 527 F.Supp. at 1287.

As the court stated in *Dawson:* "Thus, where a practice or policy in the … County Jail is constitutionally sound, this court must defer to the informed judgment of the parties charged with the jail's management even though a seemingly more enlighted approach has been adopted for the State Prison." In an earlier opinion, the Fourth Circuit had held that where "the county prisoners are treated alike and the Department prisoners are treated alike, … there is no Equal Protection violation." *Kersh v. Bounds,* 501 F.2d at 588.

**10.** Although defendants are various Cook County officials, plaintiff apparently sues them as agents of the State. Plaintiff nowhere alleges that the Cook County Department of Corrections unlawfully discriminates between the pretrial detainees and the convicted persons in its custody. Rather, plaintiff maintains that the *State's* failure to provide pretrial detainees with the same right that the Illinois Code of Corrections grants to convicted persons in the custody of the IDOC violates the Equal Protection Clause. Thus, in essence, it is the legislative classification between those within the jurisdiction of the IDOC and those who are relegated to the custody of the Sheriff which plaintiff attacks.

There are certainly many obvious differences in the situations of short-term versus long-term inmates. The very fact that a prisoner will remain in the system longer creates a need for more rules and procedures to cover the greater varieties of situations and problems that will occur. Further, when an inmate remains in the prison system longer, the authorities have a greater interest in and control over that inmate's development over time, including his placement within the system and his rehabilitation. Of course, whether two groups are similarly situated for purposes of challenged disparate treatment depends upon the nature of the distinction. *Reed v. Reed,* 404 U.S. 71, 77, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971).

Where courts have found equal protection violations involving two groups of prisoners, the circumstances were distinguishable from those in the instant case. For example, in *Hill v. Hutto,* 537 F.Supp. 1185 (E.D.Va.1982), long-term felons housed in a city jail awaiting transfer to overcrowded state prisons were not afforded the programs and rehabilitation opportunities that were available in the state system. The court found that this difference in the treatment of similarly situated convicted persons based on their location violated the Equal Protection Clause. *Id.* at 1189. The court was careful to limit its holding to substantive rules because requiring the city jail to adopt the Virginia Department of Correction's procedural regulations would be an undue intrusion into the jail's administration. *Id.* at 1190.[11]

Also relevant is *Lock v. Jenkins,* 641 F.2d 488 (7th Cir.1981), where pretrial detainees being housed in a state prison for safekeeping were subjected to significantly more burdensome conditions than were convicted persons in the same institution. The court held that absent a rational justification of the different treatment, this was a violation of equal protection. *Id.* at 497. It is helpful to compare *Lock* with *Kersh v. Bounds,* 501 F.2d at 588–89, where the Fourth Circuit found no equal protection problem where county prisoners temporarily housed in state prison were denied elective medical treatment.

■ These cases illustrate that the nature of the disparate treatment is significant in determining whether an equal protection problem exists. The court in *Hutto* found that for purposes of rehabilitation, a long-term felon could not be treated like the pretrial detainees with whom he was housed in the city jail; equal protection required that he be given the same opportunities as similarly situated convicted persons. Similarly, in *Kersh,* the state system was not required to pay for the elective medical treatment of temporary detainees simply because it provided such treatment to its long-term inmates. On the other hand, unlike benefits such as rehabilitation programs and elective medical treatment which are specifically intended for the long-term prisoner, decent conditions of confinement are not related to that distinction between county and state inmates.[12] Thus, in *Lock,* the court held that all inmates of the defendant state prison must be treated similarly for that purpose.[13]

---

**11.** *See also Dudley v. Stewart,* 724 F.2d 1493 (11th Cir.1984) (Convicted felon in county jail awaiting transfer to state prison is entitled to whatever due process protections are afforded similarly situated convicted persons housed in state prison.)

**12.** Plaintiff in this case does not challenge the conditions of his confinement. While the complaint alleged that the Audy Home provides better conditions than does Cook County Jail, including greater safety, a better school, and more visitation (Compl. at ¶ 20), plaintiff has not introduced any such evidence in support of his motion for summary judgment. Furthermore, plaintiff has never sought to compare his condi-

tions of confinement with those of juveniles in the State system.

**13.** Furthermore, equal protection analysis becomes murky in comparing the conditions of confinement of pretrial detainees and convicted persons. Due process requires that pretrial detainees not be punished. *Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). Thus, there is a more stringent standard applied to treatment of pretrial detainees: the conditions of their confinement may be no more burdensome than is necessary to ensure their presence at trial. *Duran v. Elrod,* 542 F.2d 998 (7th Cir.1976). *See, e.g., Owens-El v. Robinson,* 442 F.Supp. 1368 (W.D.Pa.1978) (Where pretrial

*Swansey v. Elrod*, 386 F.Supp. 1138 (N.D.Ill.1975), is the only case cited by plaintiff or uncovered by this Court which found that a county corrections system was required by the Equal Protection Clause to give pretrial detainees in its custody treatment similar to that given convicted persons in the State Department of Corrections in compliance with the State Code of Corrections. *Id.* at 1143–44.

In *Swansey*, plaintiffs protested the Cook County Sheriff's policy regarding pretrial detainees between the ages of 13 and 17 who were to be tried as adults. These detainees were automatically housed at the Cook County Jail and commingled with adults. Plaintiffs claimed that the Sheriff's policy deprived them of equal protection of the laws because the Illinois Code of Corrections prohibits housing a minor under 17 years old with adults in the Adult Division, even if the minor was convicted in the adult criminal justice system.

The court in *Swansey* held that plaintiffs had demonstrated a likelihood of success on their equal protection claim, entitling them to a preliminary injunction. Where the State provided rehabilitation services to convicted juvenile felons because of their age, the court held it was irrational to deny unconvicted detainees the same services under similar conditions. *Id.* at 1144. Because the only reason advanced for the allegedly discriminatory treatment was the slight administrative inconvenience involved in transporting the juveniles to court once a month, the court found that Cook County's action was not rationally related to a legitimate government purpose and, hence, violated the Equal Protection Clause. *Id.*

In its equal protection analysis, the *Swansey* court did not consider whether the two groups of inmates were similarly situated for equal protection purposes.[14] Furthermore, in *Swansey* there was a direct dichotomy between the treatment of pretrial detainees and convicted persons of the same age group: all the 13 to 16 year olds to be tried as adults were pretrial detainees; none of the plaintiff class were convicted persons with short sentences. In the instant case, however, it is not true that plaintiff Cooper is treated differently than all convicted persons of his age solely because he is a pretrial detainee.

Pretrial detainees such as plaintiff Cooper are in a different situation than the convicted persons granted a pre-transfer hearing in Section 3–10–7. Section 3–10–7 provides that when a juvenile originally committed to the Juvenile Division of the IDOC turns 17 years old, he shall receive a judicial hearing to determine whether he should be transferred to the Adult Division. Thus, the class of persons afforded this special protection includes only those offenders who were sentenced when they were under 17 years old to a term of imprisonment of one year or more.

In contrast, convicted felons who are 17 years old at the time of sentencing are automatically committed to the Adult Division: those 17 year olds are not given a judicial hearing to determine whether they are better suited to the Juvenile Division or the Adult Division. Under Illinois law, it is the minor's age at the time of sentencing, rather than at the time of the offense, which determines where he is originally committed. *People v. Green*, 104 Ill. App.3d 278, 60 Ill.Dec. 38, 432 N.E.2d 937

detainees and convicted persons were commingled in the same institution, equal protection and due process dictated that the conditions of confinement had to be those constitutionally adequate for pretrial detainees.)

**14.** Further, in *Swansey*, plaintiffs had brought an Eighth Amendment claim as well as an Equal Protection count. After a preliminary injunction hearing, the court noted that there are crucial psychological distinctions between

13 to 16 year olds and 17 to 20 year olds, and that incarceration at Cook County Jail with older inmates could cause permanent psychological damage to the plaintiff class. It appears that the court in *Swansey* considered the two claims together: "Measured against the effects of the treatment accorded juveniles in Cook County jail [sic] the state has yet to present a rational reason for its behavior." *Id.* at 1143. *See supra* note 9.

(1982); *People v. Costello*, 95 Ill.App.3d 680, 51 Ill.Dec. 178, 420 N.E.2d 592 (1981).

The legislative scheme, then, distinguishes between those who are given a long-term sentence when they are under age 17, and all others who are sentenced at age 17 or older. The statute gives special protections to the younger group: they are originally committed to the Juvenile Division; they cannot be transferred to the Adult Division without a prior judicial hearing; and the sentencing court retains jurisdiction over them until they reach age 21.

Plaintiff Cooper, if he is ever convicted, will be sentenced at age 17 or older.[15] If Cooper is convicted, then, he will be committed automatically to the Adult Division of the IDOC: there will be no individualized determination made.

The statutory scheme thus classifies convicted persons by their age group, with the relevant age being the offender's age at the time of sentencing. Plaintiff Cooper is in the age group which does not receive a judicial hearing prior to commitment to the Adult Division. Given these circumstances, defendants, by sending 17 year old Cooper to the 17 to 20 year old section of the Cook County Jail, have not denied him a right accorded similarly situated convicted persons.

### Conclusion

█ In conclusion, this Court finds that defendants have not deprived plaintiff Cooper of the equal protection of the laws. Further, Cooper had no substantive due process right, based on either the Due Process Clause or an Illinois statute, to a judicial hearing prior to transfer to Cook County Jail. For these reasons, defendants' motion for summary judgment is granted and plaintiffs' motion correspondingly is denied.

### Appendix

Paragraph 1005-8-6 provides in pertinent part:

\* \* \* \* \* \*

**15.** *See* note 5, *supra.*

(c) All offenders under 17 years of age when sentenced to imprisonment shall be committed to the Juvenile Division of the Department of Corrections .... The committing court shall retain jurisdiction of the subject matter and the person until he or she reaches the age of 21 unless earlier discharged. However, the Juvenile Division of the Department of Corrections shall after a juvenile has reached 17 years of age, petition the court to conduct a hearing pursuant to subsection (c) of Section 3–10–7 of this Code.

Paragraph 1003–10–7 provides in pertinent part:

§ 3–10–7. Interdivisional Transfers. (a) In any case where a juvenile was originally committed to the Juvenile Division under Section 5–8–6, the Department of Corrections shall, within 30 days of the date that the juvenile reaches the age of 17, send formal notification to the sentencing court and the State's Attorney of the county from which the juvenile was sentenced indicating the day upon which the juvenile offender will achieve the age of 17. Within 90 days of receipt of that notice, the sentencing court shall conduct a hearing, pursuant to the provisions of subsection (c) of this Section, to determine whether or not the juvenile shall continue to remain under the auspices of the Juvenile Division or be transferred to the Adult Division of the Department of Corrections.

\* \* \* \* \* \*

(c) Any interdivisional transfer hearing conducted pursuant to subsection (a) of this Section shall consider all available information which may bear upon the issue of transfer. All evidence helpful to the court in determining the question of transfer, including oral and written reports containing hearsay, may be relied upon to the extent of its probative value, even though not competent for the purposes of an adjudicatory hearing.

The court shall consider, along with any other relevant matter, the following:

1. The seriousness of the offense to the community and whether the protection of the community requires transfer.

2. Whether the offense was committed in an aggressive, violent, premeditated or willful manner.

3. Whether the offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

4. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

5. The record and previous history of the juvenile, including previous contacts with the Juvenile Division, other law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to the Juvenile Court, or prior committments to juvenile institutions.

6. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile by the use of procedures, services and facilities currently available to the Juvenile Division.