Ricky HILL, et al., Plaintiffs,

v.

T. Don HUTTO, et al., Defendants.

Civ. A. No. 81–0944–R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 3, 1982.

James W. Hopper, Richmond, Va., for defendant Winston.

Richard F. Gorman, III, Richmond, Va., for defendants Robb and Landon.

Ricky Hill, Ralph E. Mundrey, Leroy Johnson, Albert Lee Bullock, Lawrence C. Thomas, Jr., Nate Tillery, Chris Arthur, David Leroy Jackson, Jr., Andrew Carrington, Leroy Lewis, Theodore J. Bowman, Melvin J. Wingfield, Robert Louis Richardson, James Michael Wilson, pro se.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

The plaintiffs are a group of state prisoners who are or have been incarcerated in the Richmond (Va.) City Jail. They have filed a section 1983 action alleging that the state and city prison authorities have failed to provide them with the same programs and rehabilitation opportunities that are available to inmates held in state facilities. See 42 U.S.C. § 1983 (1976). The plaintiffs assert that this differential treatment violates the equal protection clause of the fourteenth amendment. The defendants to this suit are the governor of Virginia, the director of the Virginia Department of Corrections (VDOC), and the Richmond sheriff. The state defendants have moved for summary judgment. See Fed.R.Civ.P. 56(b). The court denies this motion for the reasons stated below.

## I. FACTUAL BACKGROUND

From December 7, 1981, to December 9, 1981, fourteen state prisoners held at the Richmond City Jail filed identical section 1983 actions. On December 10, 1981, the court, on its own motion, consolidated these actions into a single suit. Since that time, five more plaintiffs have joined the suit.

All of the plaintiffs in this suit describe themselves as long-term felons awaiting transfer to state facilities. The complaints submitted by these inmates essentially allege that state prisoners incarcerated in local jails do not receive the same programs and rehabilitation opportunities that are available to prisoners in state institutions. The complaints list seven specific instances of differential treatment: (1) that state prisoners held in local jails do not have the opportunity to earn good conduct credits; (2) that such prisoners do not have the opportunity to work and earn pay; (3) that such prisoners do not receive technical training; (4) that such prisoners may not have contact visits; (5) that such prisoners are subject to a lower level of recreation; (6) that such prisoners receive a lower level of counseling; and (7) that such prisoners are subject to a higher level of overcrowding than inmates in state prisons. The plaintiffs claim that each of these differences in treatment constitutes an equal protection violation.

The defendants in the original fourteen actions were John Dalton, T. Don Hutto, and Andrew J. Winston. Dalton was formerly the governor of Virginia. The court

will treat the new governor, Charles S. Robb, as the proper defendant in these cases. Hutto was formerly the director of the VDOC. The court will consider the current acting director, Robert M. Landon, as the intended defendant. Winston is currently the Richmond sheriff. As such, he is responsible for operating the city jail. The plaintiffs seek three forms of relief against these defendants: (1) an order accelerating transfers to state institutions; (2) a retroactive award of good conduct credits; and (3) compensatory damages.

On December 24, 1981, the defendant Winston filed a Rule 12(b)(6) motion to dismiss the claims against him. *See* Fed.R. Civ.P. 12(b)(6). On February 25, 1982, the court granted this motion in part and denied it in part. In particular, the court held that Winston was not responsible for any equal protection violations, because he did not have the power to equalize the treatment of state prisoners held in the city jail with that of inmates held in state facilities. The court, however, liberally construed the complaints to state eighth amendment claims, as well as equal protection claims. The court then proceeded to dismiss all of the eighth amendment counts, except for the two relating to inadequate recreation and overcrowding. On April 9, 1982, Winston filed a summary judgment motion on the remaining eighth amendment claims. *See id.* 56(b). The court will not consider this motion at the present time.

On December 30, 1981, the state defendants submitted a motion for summary judgment. This filing brought to the court's attention a consent decree entered in the Circuit Court of the City of Richmond, Division I, on December 8, 1981. The parties to this agreement are the Henrico County sheriff, Winston, and the VDOC. The relevant terms of the agreement are as follows:

I. *Relating to Inmate Transfers*:

. . . .

2. Transfers of inmates to State custody will continue to be made whenever the State facilities have space, in accordance with presently established priorities.

. . . .

II. *Relating to Inmate Classification*:

a. Classification work-ups for those State prisoners held at Henrico and Richmond Jails will be handled on site by state classification teams and according to existing state guidelines within 60 days of receipt of sentencing order by Department. . . .

b. Inmates with long-term sentences as mutually determined will be transferred to a State facility on a priority basis. These offenders may be exchanged for other long-term prisoners already in the State system.

c. The State guidelines on Work Release will be followed in placing offenders into a Work Release program. Once selected for Work Release, offenders will be subject to the rules and regulations of the respective jail Work Release program. Removal from a Work Release program will be at the discretion of the Sheriff, pursuant to due process requirement.

d. Once classified, every inmate subject to this agreement will be eligible for the Good Conduct Allowance (GCA) Program as set forth in State guidelines. . . .

e. The above plans are to be implemented and in operation no later than December 20, 1981.

. . . .

III. *Relating to Orientation, Counseling, and Training*:

. . . .

c. Once classified, the State will provide counseling services to State inmates in these respective jails.

. . . .

The court will now dispose of the state defendants' motion.

## II. LEGAL ANALYSIS

### A. The Equal Protection Question

The plaintiffs contend that the seven differentials in treatment listed in their complaint qualify as violations of the fourteenth amendment's equal protection

clause. The level of scrutiny to which the court must subject these differences in treatment depends on whether the differences implicate either a suspect class or a fundamental right. If the challenged state action does not involve either of the two, it will not "be subjected to the searching judicial scrutiny reserved for laws that create suspect classifications or impinge upon constitutionally protected rights." *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973). The court, instead, will "inquire only whether the challenged distinction rationally furthers some legitimate, articulated state purpose." *McGinnis v. Royster,* 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973); *accord San Antonio Independent School District v. Rodriguez,* 411 U.S. at 40, 93 S.Ct. at 1300.

■ The group of long-term felons held in the Richmond City Jail clearly does not qualify as a suspect class. *See McGinnis v. Royster,* 410 U.S. at 270, 93 S.Ct. at 1059; *Lock v. Jenkins,* 641 F.2d 488, 497 (7th Cir. 1981); *Jamieson v. Robinson,* 641 F.2d 138, 142 (3d Cir. 1981); *Kersh v. Bounds,* 501 F.2d 585, 588 (4th Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975). In addition, access to prison programs and rehabilitation opportunities is not a fundamental right. *See McGinnis v. Royster,* 410 U.S. at 270, 93 S.Ct. at 1059; *Jamieson v. Robinson,* 641 F.2d at 142. *See also Bowring v. Godwin,* 551 F.2d 44, 48 n.2 (4th Cir. 1977); *French v. Heyne,* 547 F.2d 994, 1002 (7th Cir. 1976); *McCray v. Sullivan,* 509 F.2d 1332, 1335 (5th Cir.), *cert. denied,* 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975). Finally, freedom from overcrowding and the opportunity to engage in physical recreation are not fundamental rights in the equal protection sense. *See San Antonio Independent School District v. Rodriguez,* 411 U.S. at 29–39, 93 S.Ct. at 1294–1300. Thus, the court will apply the rational-basis test, rather than the strict-scrutiny standard of review.

All of the plaintiffs in this case are long-term state prisoners whom the VDOC has placed in the Richmond City Jail pending transfer to a state facility. Each plaintiff claims that he has spent more than ninety days in the jail after sentencing. The reason that the VDOC must hold some prisoners in local jails for so long after sentencing is that all state institutions currently are filled to capacity.

The VDOC moves inmates from local jails into the state system whenever space becomes available. The VDOC makes these transfers on the basis of an established priority system. *See* Affidavit of Terrell Don Hutto § 6. Inmates with major medical problems receive first priority. The VDOC gives second priority to troublemakers. The third priority class consists of prisoners who are nearing their initial parole eligibility date. The members of this class obviously are those inmates who have relatively short sentences. The fourth priority is for those prisoners who are awaiting extradition. The VDOC gives fifth priority to inmates held in overcrowded jails. The sixth and final priority is for those prisoners who have spent the most time in jail. As a result of this priority system, many long-term state prisoners remain incarcerated in local jails for more than ninety days after sentencing. The key question, therefore, becomes whether the equal protection clause entitles the inmates held in local jails to the same treatment that their counterparts in the state system receive.

The Richmond City Jail was designed to hold short-term prisoners. As a consequence, it does not have the same facilities for rehabilitation and recreation that state institutions have. The VDOC, nonetheless, must place all new convicts in a local jail on a short-term basis while it processes their sentencing orders. The court, however, holds that, under the present circumstances, the VDOC should be able to assimilate all inmates into the state system within ninety days of sentencing. This time period allows thirty days for receipt of the sentencing order and sixty days for classification. The thirty-day period for receipt of the sentencing order is sufficient, because Virginia law requires delivery of the order to the VDOC within this period. *See* Va.Code § 53–21.1

(Supp.1981). The sixty-day period for processing also is reasonable, because the VDOC has agreed to classify all inmates held in the Richmond City and Henrico County Jails within that period. *See* Consent Decree § II(a) (Dec. 8, 1981).

The court next rules that the equal protection clause prohibits arbitrary differences between the treatment given to state prisoners held for more than ninety days after sentencing in local jails and that accorded similarly situated inmates in state facilities. *See McGinnis v. Royster*, 410 U.S. at 270–74, 93 S.Ct. at 1059–1061; *Kersh v. Bounds*, 501 F.2d at 588–89; *Ramos v. Lamm*, 485 F.Supp. 122, 159–60 (D.Colo.1979), *set aside in part on other grounds*, 639 F.2d 559 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Mitchell v. Untreiner*, 421 F.Supp. 886, 895 (N.D.Fla.1976); *Martinez Rodriguez v. Jimenez*, 409 F.Supp. 582, 593 (D.P.R.1976), *aff'd*, 551 F.2d 877 (1st Cir. 1977). *But see Jamieson v. Robinson*, 641 F.2d at 142–43. A state prisoner should not be subject to substantially worse conditions of confinement merely because the VDOC happens to place him in a local jail, rather than in a state institution. *See Mitchell v. Untreiner*, 421 F.Supp. at 895; *Martinez Rodriguez v. Jimenez*, 409 F.Supp. at 593. Such a treatment differential qualifies as arbitrary.

When the VDOC holds an inmate in a local jail for more than ninety days, it essentially is leasing prison space from the local government.[1] This type of leasing is permissible as long as the VDOC treats the leased space as a part of the state correctional system. The VDOC, therefore, must require the local authorities to confine the prisoner in accordance with the substantive regulations that apply to inmates of state facilities.[2]

The VDOC has great control over local jails through the State Board of Corrections. In particular, the Board of Corrections has the power to "prescribe minimum standards for the construction and equipment of local jails ... and minimum requirements for the feeding, clothing, medical attention, attendance, care, segregation, and treatment of all prisoners confined in such jails." Va.Code § 53–133 (1978). If a local jailor fails to comply with these requirements, the Board may enforce its standards through judicial process. *See id.* §§ 53–135, –173. Thus, the VDOC has sufficient authority to compel local jails to comply with its substantive regulations in holding long-term felons.

There are several limitations on the court's holding that state prisoners held in local jails must receive the same treatment as their counterparts in state institutions. First, this holding does not limit in any way the VDOC's power to vary conditions of confinement on the basis of a rational classification system. Thus, the VDOC could provide a lower level of rehabilitation to a certain class of inmates if it had rationally determined that those inmates would benefit less from such activities. In addition, the VDOC could use the allegedly more crowded conditions of the Richmond City Jail as a punishment for mild misbehavior. The VDOC, however, apparently has made no effort to classify the long-term felons in the jail along these lines. The VDOC can avoid most equal protection problems simply by devising a rational scheme for allocating state prisoners to the jail.[3]

---

1. State law, in fact, requires the VDOC to reimburse local jails for the cost of keeping state prisoners. *See* Va.Code § 53–179 (Supp.1981). In addition, the state pays one-half of the cost of any approved construction of local facilities. *See id.* § 53–133.1. These payments together are equivalent to rental payments for the use of space and equipment in local jails.

2. Section 53–135.1 of the Virginia Code requires the VDOC to transfer into the state system any "jail inmate whose sentences are final and ... total more than twelve months." Va.Code § 53–135.1 (1978). This section indicates a recognition of the principle that all long-term felons ought to be confined in accordance with VDOC regulations and practices.

3. Another means of avoiding equal protection problems would be to rotate all state prisoners into local jails for a specified portion of their sentences. This alternative may be especially attractive in light of the VDOC's agreement to rotate state prisoners in and out of the Rich-

Second, the court's holding applies only to substantive rules. There is no need for the Richmond City Jail to adopt the VDOC's procedural regulations when holding long-term felons. Application of such rules would not further the plaintiffs' equal protection rights. Furthermore, such a requirement would constitute an undue intrusion into the jail's administration.

Third, the court's holding does not require precise equality. It, instead, mandates only substantial equality. *See Martinez Rodriguez v. Jimenez*, 409 F.Supp. at 593. The court realizes that the VDOC cannot precisely equalize the treatment of all similarly situated inmates throughout the correctional system.

Fourth, equal protection does not require the VDOC to transfer all felons into state facilities within a certain time period after sentencing. The transfer of state prisoners is strictly within the discretion of the VDOC. *See Montanye v. Haymes*, 427 U.S. 236, 242–43, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976); *Meachum v. Fano*, 427 U.S. 215, 223–29, 96 S.Ct. 2532, 2537–40, 49 L.Ed.2d 451 (1976); Va.Code §§ 53–19.17, –135.1 (1978 & Supp. 1981). Thus, the plaintiffs have no right to demand assignment to a state facility. *See Peterson v. Davis*, 421 F.Supp. 1220, 1223 (E.D.Va.1976), *aff'd*, 562 F.2d 48 (4th Cir. 1977).

Finally, the court's holding applies only to felons held in the Richmond City Jail for more than ninety days after sentencing. The process of assimilating a newly convicted prisoner into the state system obviously requires a significant amount of time. This time requirement gives the VDOC a rational basis for discriminating against new inmates with respect to conditions of confinement.

B. The Specific Grievances

■ The plaintiffs have listed seven specific examples of differential treatment in their complaints. First, they complain that felons held in local jails are not able to participate fully in the state's good conduct

credit system. Virginia law provides for two separate good conduct programs. State prisoners convicted before July 1, 1981, are subject to the old good conduct time (GCT) system. Under this program, an inmate receives a credit of ten days against his sentence for every twenty days of satisfactory conduct. *See* Va.Code § 53–213 (Supp.1981). The inmate also may earn extraordinary credits by completing special rehabilitation programs. *See id.* § 53–213.1 (1978). This system applies to all state prisoners convicted before July 1, 1981, regardless of whether they reside in a local jail or in a state institution. *See id.* §§ 53–151(a), –213 (Supp.1981).

State prisoners convicted on or after July 1, 1981, are subject to the new good conduct allowance (GCA) program. *See id.* § 53–209.1. Under this system, the VDOC must place each inmate in one of four conduct classes. *See id.* § 53–209.4. The inmate then receives good conduct credits at the rate specified for his particular class. *See id.* The rates range from zero days to thirty days of credit for each thirty days served. *See id.* The VDOC may reclassify an inmate if his conduct improves or deteriorates. *See id.* Prisoners convicted before July 1, 1981, may elect to participate in the GCA system, rather than the GCT program. *See id.* § 53–209.1.

Unlike the GCT system, the GCA program does not apply equally to all state prisoners. Before classification, an inmate of a state facility receives only fifteen days of credit for every thirty days of satisfactory conduct. *See id.* § 53–209.5. State prisoners held in local jails accumulate credits at the equivalent rate of ten days for every twenty days of good conduct. *See id.* This fixed credit rate for jail inmates is completely rational as long as the VDOC places its prisoners in jails on only a short-term basis. The court, however, rules that, for GCA purposes, the VDOC must treat inmates held in the Richmond City Jail for more than ninety days as though they were residents of a state facility. Unless the VDOC also classifies these inmates, there,

mond City and Henrico County Jails. *See* Con-

sent Decree § 11(b).

of course, will be no change in the rate at which they accumulate credits. The court, therefore, holds that delays in classification for state prisoners held in the Richmond City Jail must be no longer than those encountered by inmates of state facilities.

The provisions of the state consent decree that relate to the GCA system may moot the court's rulings on this subject to a certain extent. In this decree, the VDOC agreed to classify all state prisoners held in the Richmond City and Henrico County Jails within sixty days of sentencing. *See* Consent Decree § II(a) (Dec. 8, 1981). These prisoners will be eligible for the GCA program after classification. *See id.* § II(d). The VDOC began classifying its prisoners in the Richmond City Jail on December 20, 1981. *See* Second Affidavit of Robert G. Spann ¶ 4. As of March 25, 1982, the VDOC had classified almost half of these inmates. *See id.* These efforts satisfy the court's ruling that the VDOC must allow jail inmates to participate in the GCA system. The court, however, does not have sufficient information to determine whether the VDOC is already complying with the court's ruling on delays in classification.

The plaintiffs' second grievance is that the VDOC has not provided them with the same opportunity to work and earn pay that inmates in the state system have. *See* Va.Code §§ 53–220.1 to –224 (1978). The VDOC again should treat the Richmond City Jail inmates as though they were incarcerated in a state facility. The VDOC must provide them with all of the work opportunities mandated by state law and VDOC regulations. The court does not have sufficient information at this time to determine what specific changes at the jail are necessary.[4]

The plaintiffs' third complaint is that they do not receive any technical training. The VDOC must furnish long-term jail inmates with training programs that are comparable to those provided in state institutions. The court again does not have enough information to determine what minimum level of programs is necessary under VDOC regulations.

The plaintiffs' fourth grievance is that they do not have contact visitation privileges. The VDOC must allow them the same visitation privileges that similarly situated inmates in the state system have. The court needs more information to make a specific determination on this grievance.

The plaintiffs next complain that they receive less recreation opportunities than their counterparts in state institutions. The VDOC should equalize recreation opportunities to the extent possible. The jail inmates should receive whatever level of recreation the VDOC regulations mandate.

The plaintiffs' sixth grievance is that they receive a lower level of counseling than similarly situated prisoners in the state system. Under the state consent decree, the VDOC has agreed to provide counseling services to its prisoners confined in the Richmond City and Henrico County Jails. This agreement may satisfy the counseling grievance.

Finally, the plaintiffs allege that they are subject to a higher level of overcrowding than their counterparts in state prisons. The court does not have enough information to determine whether this allegation is true. If it is, the VDOC should take steps to make the level of overcrowding on the long-term tiers at the jail substantially equal to the level of overcrowding in the state system.[5]

## C. The Available Remedies

The plaintiffs request three forms of relief in their complaints. First, they ask the

---

**4.** The plaintiffs appear to be complaining about an absence of work opportunities within the jail. The court notes that the plaintiffs already have the right to participate in a work-release program. *See* Consent Decree § IV(a). The court, however, does not have sufficient information to determine whether the terms of this program are substantially similar to those of the equivalent state program.

**5.** The most obvious solution is to transfer jail inmates into state institutions, until the overcrowding level in the jail is roughly equal to that in the state system.

court to accelerate transfers into the state system. As stated earlier, the transfer of state prisoners is strictly within the VDOC's discretion. *See Peterson v. Davis*, 421 F.Supp. at 1223; Va.Code § 53–19.17, –135.1 (1978 & Supp. 1981). The equal protection clause guarantees substantially equal treatment, but not assignment to a state facility. The court, therefore, will not interfere with the VDOC's system for moving inmates from local jails into the state system.

■ Second, the plaintiffs request a retroactive award of GCA credits at the rate of twenty days for every thirty days served in the jail. The court must deny this relief, because a writ of habeas corpus is the proper vehicle for challenging the length of confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 498–99, 93 S.Ct. 1827, 1840–41, 36 L.Ed.2d 439 (1973). Thus, the court may make a prospective award of GCA credits, but not a retrospective one. *See Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974); *Johnson v. Hardy*, 601 F.2d 172, 174 (5th Cir. 1979); *Bradford v. Weinstein*, 519 F.2d 728 (4th Cir. 1974), *vacated on other grounds*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *Derrow v. Shields*, 482 F.Supp. 1144 (W.D.Va.1980). The plaintiffs may attempt to obtain retroactive relief by filing a habeas corpus petition in the state courts.

■ Finally, the plaintiffs claim compensatory damages for the time beyond ninety days after sentencing that they have spent in the Richmond City Jail. This remedy is not available, because all of the state defendants are immune from monetary liability. The state and any state officials sued in their official capacities are absolutely immune from liability under the eleventh amendment. *See Edelman v. Jordan*, 415 U.S. 651, 653, 94 S.Ct. 1347, 1351, 39 L.Ed.2d 662 (1974). In addition, any state defendants sued in their individual capacities receive a good faith immunity. *See Procunier v. Navarette*, 434 U.S. 555, 561–62, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978). There is no allegation in any of the complaints that the state defendants have not acted in good faith at all times. The murkiness of the law in this area reinforces the conclusion that they exercised good faith. *See id.* at 562, 98 S.Ct. at 859. The court, therefore, holds that the state defendants in this action are immune from monetary liability.

The only remaining remedy for the plaintiffs is prospective relief. The court, however, will need additional information before proceeding in this area. It, therefore, orders the state defendants to submit an informational memorandum within twenty days of the date of this opinion. This memorandum should indicate what minimum levels of treatment state law and the VDOC's regulations prescribe for state inmates in each of the seven areas listed by the plaintiffs. It also should state what minimum levels of treatment the VDOC customarily provides in each of the seven categories. The memorandum next should describe the VDOC's progress to date in remedying any treatment differentials that may exist. Finally, the memorandum should state what future steps the defendants feel are appropriate in light of the court's rulings. The plaintiffs will have twenty days to respond to any filing made by the defendants.