**Ricky HILL, et al., Plaintiffs,**

v.

**T. Don HUTTO, et al., Defendants.**

**Civ. A. No. 81–0944–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

March 11, 1983.

Plaintiffs pro se.

James W. Hopper, Richmond, Va., for defendant Winston.

Richard F. Gorman, III, Asst. Atty. Gen., Richmond, Va., for state defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter comes before the court on defendants' motion for summary judgment. *See* Fed.R.Civ.P. 56(b). This court has denied defendants' previous motions for summary judgment on May 3, 1982, *See* 537 F.Supp. 1185, and on Oct. 14, 1982. The factual background of this case appears at 537 F.Supp. 1185. (E.D.Va.1982). The May 3, 1982 order dismissed plaintiffs' claims for monetary damages, leaving only plaintiffs' claims for injunctive relief.

The court's October 14, 1982 order directed the defendants to provide the court with certain specified information, which the defendants supplied on Nov. 12, 1982 and Dec. 6, 1982. The plaintiffs were given an opportunity to respond to both of defendants' informational briefs. In addition, on January 20, 1983, the defendants filed a memorandum of law, and on January 26, 1982, they renewed their motion for summary judgment. The plaintiffs were also given an opportunity to respond to the defendants' motion for summary judgment. Two of the plaintiffs presented the court with a responsive memorandum of law.

In addition, on December 27, 1982, the court received a motion for voluntary dismissal from plaintiff James Michael Wilson, which motion the court granted the same day.

The defendants uncontradicted informational responses, presented in the form of affidavits, fill out the factual background of this case, and show the following data of significance in consideration of defendants' motion for summary judgment:

(i) During the period January 1, 1981 through October 31, 1982, the average amount of time from the prisoner's assignment to warrant status[1] to transfer into the state system was 87.1 days, for the 827 inmates awaiting transfer during that period. The average time from entry of warrant status to transfer for the prisoners transferred between January 1, 1981 and June 30, 1982 was 94.3 days. The average length of time of transfer for the 129 inmates awaiting transfer during the period July 1, 1982 through Oct. 31, 1982 was 47.6 days. The date July 1, 1982 is of significance because that was the date upon which Virginia's new Brunswick Correctional Facility opened.

(ii) The average number of state inmates in the Richmond City Jail awaiting transfer on the first day of each month during the period January 1, 1981 through June 1, 1982 was approximately 143. The average number of inmates awaiting transfer on the first day of each month during the period July 1, 1982 through Oct. 1, 1982 was approximately 46.

(iii) All of the plaintiffs in this case have been transferred from the Richmond City

1. The court employs the measure of the length of time between entry of warrant status to transfer, rather than the period from sentencing to transfer, because of Virginia's statutory procedure for conveying convicted felons into an appropriate receiving unit. Under Va.Code § 19.2–310, the Director of the Virginia Department of Corrections, or his designee, will transfer a convicted felon housed in a local jail to a state facility following receipt of the report of disposition from the Clerk of the Court where the felon was convicted. The Department then places the prisoner on warrant status, indicat-

ing his eligibility for transfer. The time between receipt of court documents usually takes no more than two weeks; however, other factors, including delays occasioned by the prisoner's appeals, may increase the period of time between conviction and the issuance of the prisoner's warrant status. However, no prisoner may be transferred from a local jail to a state facility without issuance of warrant status. *See* Affidavit of Thomas Towberman, Assistant Director of Classification and Parole, Virginia Department of Corrections, at ¶ 4 (December 3, 1982).

Jail to the state prison system. However, four plaintiffs have been returned to the jail: plaintiffs David Scott, Lawrence Thomas and Andrew Carrington returned to stand trial; and plaintiff Ricky Hill returned to the Richmond Jail for permanent reassignment.

(iv) Plaintiff Ricky Hill had been transferred from the Jail to the Brunswick Correctional Facility on June 11, 1982; he was returned to the Jail on September 28, 1982, at the request of Sheriff Andrew Winston. Sheriff Winston's request was apparently responsive to Hill's desire to return and work in the Jail Barbershop. *See* Affidavit of Thomas Toberman, dated Nov. 3, 1982, at Exhibit A.

(v) During the period January 1, 1981 through October 31, 1982, 187 inmates were transferred *from* the state correctional system to the Richmond City Jail. Of these, 165 of the re-transfers were temporary, for inmate's court appearances; 22 of the re-transferred inmates were permanently reassigned.

(vi) Inmates permanently re-assigned to the Richmond City Jail receive Good Conduct Credit Allowance (GCA) pursuant to § 53.1–198, in accordance with Guideline 806 reflecting entry into the Good Conduct System.

The primary basis of defendants' motion for summary judgment is their contention that this case is moot. Defendants' have previously sought summary judgment on grounds of mootness, but the court was at that time unable to evaluate whether the plaintiffs' claims were, in fact or in law, moot. *See* Opinion of October 14, 1982. Defendants' renewed motion relies upon the newly available information to supplement their mootness argument.

In determining whether plaintiffs' claims are moot, it may be useful to re-examine plaintiffs' complaints to determine the nature of their claims and to determine what they could hope to achieve through a grant of prospective relief.

The plaintiffs' various separate complaints were identical copies of the same document, bringing suit and moving for class certification. They described the class they sought to represent as a "certain defined class of felony prisoner[s] in custody awaiting transfer to the Virginia Corrections Department", and the grievances they sought to remedy were the defendants' "current practices of assigning jail custody felons". These practices were described as the methods by which the defendants' were "allowing prisoners with longer sentences to remain in Virginia jails while priority has been given to shorter term sentenced felon prisoners for processing into the State prison system". Plaintiffs also alleged that these practices produced a variety of inequitable disparities, summarized at 537 F.Supp. at 1186, between the treatment of sentenced felony prisoners at the Richmond Jail Facility, and those who have been transferred into the state system. Plaintiffs summarized the relief they each sought as the production of a court order "aiming to accelerate this herein described class of prisoners to the state prison system on the basis of 'first-in, first-out' ". Plaintiffs' complaint emphasizes the overcrowding of the Richmond City Jail.

Thus, this court interprets plaintiffs' separate but identical complaints as ultimately intended to correct the difficulties which cause delays and lead to unequal treatment to which prisoners awaiting transfer are subject. The complaint is not, by any interpretation, a generalized suit aimed at eliminating all disparities of treatment between state inmates at the Richmond City Jail and state inmates in the state system, but is *only* an attempt to eliminate inequalities these plaintiffs and others allegedly experience while awaiting transfer to the state correctional system. Defendants' assert that because none of the named plaintiffs are still in the Richmond City Jail *awaiting transfer* to the state correctional system, their claims are moot.

The mootness doctrine is a function of the requirement under Article III, Section 2, of the United States Constitution, that judicial power extend only to cases and controversies. *See United States Parole Commission v. Geraghty,* 445 U.S. 388, 395–

96, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980); *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974); *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). The requirement embodies the principle that "federal courts are without power to decide questions that cannot affect the rights of the litigants before them". *North Carolina v. Rice, supra.* In determining whether this case presents questions that the resolution of which can affect the rights of these litigants, the court must examine the two aspects of the mootness doctrine: whether the issues presented are 'live', or whether the parties present a cognizable interest in the outcome. If either the "live controversy" or "personal stake" requirements are unmet, the case must be dismissed as moot. *See Murphy v. Hunt,* 455 U.S. 478, 483, 102 S.Ct. 1181, 1184, 71 L.Ed.2d 353 (U.S., 1982); *United States Parole Commission v. Geraghty, supra,* 445 U.S. at 396, 100 S.Ct. at 1208; *Powell v. McCormick,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1971).

Without question, this court cannot now enter an injunctive decree which could affect plaintiffs rights as inmates in the Richmond City Jail awaiting transfer to the state correctional system. Even plaintiff Hill, who has returned to the Richmond City Jail, can present this court with no future personal injury (and it is only the future with which this suit for injunctive relief is concerned) from which *this* lawsuit could protect him. While Hill, or other state inmates permanently reassigned to the Jail, may or may not have grounds for another lawsuit aimed at correcting inequities in treatment between inmates permanently assigned to the jail and inmates permanently assigned to the state system (a question upon which this court takes no position), he presents no basis upon which he may support a claim in the present case.

Plaintiffs Jackson and Louis, who responded on behalf of all plaintiffs to defendants most recent motion for summary judgment, contend that even if the named plaintiffs' cases are moot, inmates currently awaiting or who will in the future await transfer into the state system possess a sufficient "personal stake" to present this court with a justiciable controversy. Thus, plaintiffs in effect seek resolution of their outstanding motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. They seek to "shift the focus of examination from the elements of justiciability to the ability of the named representatives to 'fairly and adequately protect the interests of the class'. Rule 23." *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1974).

The defendants contend that this court should reject plaintiffs' application for class certification because none of the named plaintiffs are sentenced felons awaiting transfer, and, thus, they are not members of the class they purport to represent. *See, e.g., Sosna v. Iowa, supra; Hall v. Beals,* 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); *Clay v. Miller,* 626 F.2d 345 (4th Cir.1980). However, the obvious rejoinder to that assertion is that, while plaintiffs may not now be representative of the class they purport to represent, at one time they *were* sufficiently representative; that is, this case could be said to present claims "so inherently transitory that the trial court will not have enough time to rule on a motion for class certification before the proposed representative's individual interest expires". *United States Parole Commission v. Garraghty,* 445 U.S. 388, 399, 100 S.Ct. 1202, 1210, 63 L.Ed.2d 479 (1980); *Gerstein v. Pugh,* 420 U.S. 103, 110–111, n. 11, 95 S.Ct. 854, 861, n. 11, 43 L.Ed.2d 54 (1975).

But while plaintiffs' application may satisfy the requirements of Rule 23(a), other considerations may militate against certifying a class in this case. This court has previously held that in suits for injunctive relief in which the court could, without resort to a class action, enter a decree which would run to the relief of both named plaintiffs and the class they seek to represent, there is no need for class certification. *See Ruhe v. Block,* 507 F.Supp. 1290, 1295 (1981); *See also Sanford v. R.L. Coleman Realty Co.,* 573 F.2d 173, 178 (4th Cir.1978). But denying class certification on the

grounds that relief for individuals constitutes relief for the class would lead to an anomalous result. Because denial of class certification would eliminate the only possible parties with sufficient "personal stake" to satisfy the requirements of the mootness doctrine, *no* party, named or unnamed, could obtain relief.

Fortunately, the difficulties presented by the "personal stake" branch of the mootness doctrine are irrelevant, because, regardless of whether parties with sufficient "personal stake" are before the court, this case is nonetheless moot because it does not present live issues for this court's resolution.

In concluding that this case no longer presents a live controversy, and is therefore moot, the court places strong reliance on the similarity of the case to a previous one involving a nearly identical factual and legal context. *See Inmates, Richmond City Jail v. Winston,* 622 F.2d 584 (4th Cir., 1980).[2] The plaintiffs in that case were also inmates at the Richmond City Jail. Their suit for injunctive and declaratory relief, which they also attempted to carry forward as a class action, against state and local officials because, they alleged, the defendants "wrongfully refused to transfer the class members into the state penal system and thereby deprived them of benefits and privileges which were greater than those of the jail". *See id.,* slip op. at 8. Subsequent to the filing of their complaints, all of the named plaintiffs were transferred or released. The Fourth Circuit observed that the defendants' uncontradicted affidavits

established that the jail backlog, which defendants contend had caused the difficulties alleged in plaintiffs' complaint, had been temporary and had been corrected through availability of additional state prison space. Thus, the Fourth Circuit held that regardless of whether persons remained in the jail awaiting transfer or would in the future enter the jail to await transfer, and present the court with sufficient personal stake, the relief of the backlog eliminated any remaining controversy, and the case was therefore moot.

That previous case involving inmates at the Richmond City Jail is nearly identical with the one presently before the court. Just as in the previous suit, inmates brought this suit (now for injunctive relief alone), alleging that delays in transfer to state prison facilities led to disparate treatment of sentenced felons. The named plaintiffs in the present case, like the previous case, are no longer suffering disparate treatment while awaiting transfer. And, as in the previous case, increased space availability in the state penal system has relieved the causes of the problems which led the named plaintiffs to bring their action. The uncontradicted factual material defendants supplied the court at the court's request shows that the opening of the Brunswick Correctional Center on July 1, 1982 significantly reduced overcrowding and significantly reduced the amount of time the average inmate will be delayed awaiting transfer. The statistics do not show whether the opening of the Buckingham Correctional Center, scheduled for November 1,

---

**2.** Rule 18(d) of the Rules of the United States Court of Appeals for the Fourth Circuit provides:

(ii) Citation of unpublished dispositions by counsel and oral arguments in this court and the district courts within this circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case.
(iii) If counsel believes, nevertheless, that an unpublished disposition has precedential value in relation to a material issue in a case and there is no published opinion that would serve as well, such disposition may be cited if counsel serves a copy thereof on all other parties in the case.

This court is mindful of the admonition that citation to unpublished opinions is viewed with disfavor, and is aware that none of the stated exceptions to that customary disfavor are present in this case. But, while Rule 18(d)(iii) does not provide an exception for district court citation of unpublished opinions where no other case "would serve as well", this court cannot accept that a district court should not look to a virtually indistinguishable Circuit Court case simply because the Circuit Court's opinion went unpublished. An unpublished opinion is not devoid of weight, and to the extent the cited opinion has any persuasive authority, this court finds its similarity so compelling as to make its legal conclusions irresistible.

1982, had a similar impact, but it undoubtedly has also improved conditions. The court is aware that these cases show that the Richmond City Jail has a history of intermittent periods where transfers to the state system are delayed and overcrowding results, leading to the types of conditions complained of in this and the previous case. But when such backlogs will occur is a product of a host of factors, such as state sentencing practices, or state prison expenditures, all of which are beyond this court's ability to control, at least within the proper confines of this case. Indeed, at this point, it would be mere speculation to assert that such a backlog will ever recur. Since no controversy amenable to the court's resolution remains before the court, this case is properly dismissed as moot. Defendants' motion for summary judgment is granted.